James A. Neal, Jr. Attorney for Citrus County Clerk of Courts
QUESTION: 1. How should the clerk of circuit court disburse overbid proceeds when multiple interested parties have applied for the funds but there has been no judicial determination of the validity or priority of these interests? 2. What is the clerk's liability for failing to notify interested parties as identified in s. 197.502(4), F.S., of the existence of overbid proceeds and for the subsequent disbursement of overbid proceeds excluding those interested parties?
SUMMARY: 1. With the exception of government liens, s. 197.582, F.S., does not elaborate how excess proceeds in a tax deed sale are to be distributed. Any distribution scheme of the excess proceeds, however, must accord the liens their proper priority. If the clerk has doubts as to the priorities or the proper application of the statute, he should bring a proceeding for interpleader or declaratory judgment against the holders of the various liens and interests in the property. 2. Any question of liability will depend upon the particular facts of any given situation and thus involves mixed questions of law and fact which this office cannot resolve.
AS TO QUESTION 1:
Section 197.582, F.S., provides for the disbursement of tax deed surplus funds when the property is purchased by any person other than the certificate holder. If the property is purchased for an amount exceeding the statutory bid of the certificate holder, the excess is to be paid over and disbursed by the clerk of the circuit court. Subsection (2) of the statute directs the clerk to
 distribute the excess to the governmental units for the payment of any lien of record held by a governmental unit against the property. In the event the excess is not sufficient to pay all of such liens in full, the excess shall then be paid to each governmental unit pro rata. If, after all liens of record of the governmental units upon the property are paid in full, there remains a balance of undistributed funds, the balance of the purchase price shall be retained by the clerk for the benefit of the persons described in s. 197.522(1)(a), as their interests may appear. The clerk shall mail notices to such persons notifying them of the funds held for their benefit. Any service charges, at the same rate as prescribed in s. 28.24(13), and costs of mailing notices shall be paid out of the excess balance held by the clerk. Excess proceeds shall be held and disbursed in the same manner as unclaimed redemption moneys in s. 197.473. In the event excess proceeds are not sufficient to cover the service charges and mailing costs, the clerk shall receive the total amount of excess proceeds as a service charge.[1] (e.s.)
Section 197.522(1)(a), F.S., refers to the persons listed in the tax collector's statement pursuant to s. 197.502(4), F.S. Those persons include:
1) the legal titleholder,
2) any lienholder of record who has recorded a lien against the described property, 3) any mortgagee of record, 4) any vendee under a recorded contract for deed or, if the contract is not recorded, any vendee who applied to receive notice,
5) any other lienholder who has applied to receive notices of the sale, and
6) any person to whom the property was assessed on the tax roll for the last year in which the property was assessed.
You state that applications for the excess proceeds from a tax deed sale have been submitted by the property owners of record and by a condominium association which has a recorded claim of lien against the property for common area maintenance assessments. As noted above, s. 197.582, F.S., authorizes the disbursement of excess proceeds to, among others, the legal titleholder and to any lienholder of record who has recorded a lien against the described property. Pursuant to s. 718.116(5)(a), F.S. (1990 Supp.), a condominium association has a lien on each condominium parcel for any unpaid assessments for the unit owner's share of the common expenses. The lien is effective from and after the recording of a claim of lien in the public records of the county in which the condominium parcel is located.[2] No lien recorded after October 1, 1984, however, shall continue for a longer period than 1 year after the claim of lien has been recorded unless, within that time, an action to enforce the lien has been commenced.
With the exception of governmental liens, the statute does not elaborate on how, or the priority in which, the funds are to be distributed to those persons described in s. 197.522(1)(a), F.S., who have applied for the excess proceeds of the sale. This office, however, has stated that unless a distribution scheme is utilized which accords these liens their proper priority, constitutional problems may exist.[3] Thus, this office concluded that mortgagees and lienholders of record should be paid first and these liens should be satisfied in full, each according to its priority, before applying the excess to a junior lien.
As stated in Rule 12D-13.065(3), F.A.C.:
The excess funds must be used to satisfy in full to the extent possible each senior mortgage or lien in the property before distribution of any funds to any junior mortgage or lien. Any valid lien in the property is entitled to payment before any payment is made to the titleholder or [sic] record. If a judgment lien or mortgage lien is terminated by court decree or by operation of law (i.e., Ch. 95, F.S.), such lien is not a valid lien and is therefore not entitled to be satisfied.
The relative priority of liens, however, can be fairly complex. The Department of Revenue and this office, therefore, have recommended that if the clerk has doubts as to the priorities or to the proper application of the statute in a particular situation, the clerk should bring a proceeding for interpleader or declaratory judgment against the holders of the various liens and interests in the property.[4]
AS TO QUESTION 2:
Section 197.582(2), F.S., provides that "[t]he clerk shall mail notices to such persons [as described in s. 197.522(1)(a), F.S., as their interests may appear] notifying them of the funds held for their benefit." As noted in Question One, s. 197.522(1)(a), F.S., refers to the persons listed in the tax collector's statement pursuant to s. 197.502(4), F.S. You ask what is the clerk's liability for failure to notify these individuals. Any question of liability will depend upon the particular facts of a given situation and thus involves mixed questions of law and fact which this office cannot resolve. In general, however, clerks of the court may be liable for damages resulting from any official act or omission of their duties.[5] Moreover, the courts have stated that failure to comply with the provisions of the tax laws can render the proceedings invalid where such requirements are intended for the protection of the citizen and to prevent a sacrifice of his property.[6]
The clerk is required to give bond before being commissioned, which bond "shall be conditioned upon the faithful discharge of the duties of his office."[7] Generally, a public officer is under a duty to account for and pay over moneys collected under color of office; for failure to do so, judgment on his official bond may be entered in appropriate proceedings.[8]
However, as noted above, any question of liability involves mixed questions of law and fact which this office cannot resolve.
RAB/tjw
[1] See, Rule 12-13.065(2), F.A.C., providing that proceeds in excess of the minimum bid of the tax deed applicant shall be distributed to governmental units for the payment of any lien of record held by a governmental unit against the property. If the excess is not sufficient to pay all of such liens in full, the rule provides that the governmental units shall be paid the excess on a pro rata basis. Liens of governmental units not satisfied in full shall survive the issuance of the tax deed. Any remaining funds held by the clerk are to be distributed by the clerk to those persons described in s. 197.522(1)(a), F.S.
[2] Section 718.116(5)(a), F.S. (1990 Supp.), provides that the lien is for the unpaid assessments with interest and for reasonable attorney's fees incurred by the association which are incident to the collection of the assessment and enforcement of the lien.
[3] See, e.g., AGO 82-14. And see, AGO's 78-64 and 77-99.
[4] See, Rule 12D-13.065(9), F.A.C.; AGO's 82-14, 78-64, and 77-99.
[5] See generally, 14 C.J.S. Clerks of Court s. 53. And see, Ward v. Fountain, 122 So.2d 209, 210 (1 D.C.A. Fla., 1960) (clerk is required to comply with the rules of procedure and when derelict in such performance, appropriate legal measures are available to enforce compliance as well as to secure redress by way of damages incurred as a result of his failure to perform those duties); Pent v. Forest Hills Holding Corporation,5 So.2d 873 (Fla. 1942) (if clerk allows redemption of tax certificates for less than amount required by statute to redeem, clerk is individually liable to purchaser of such certificates for the deficiency). But see, s. 768.28(9), F.S., providing that public officers shall not be held personally liable in tort for any act or omission in the scope of his employment or function unless the officer acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
[6] See, Edgewood Boys' Ranch v. Ernst, 376 So.2d 30,31 (3 D.C.A. Fla., 1979). Compare, Williamson v. Department of Revenue, 380 So.2d 466 (5 D.C.A. Fla., 1980).
[7] See, ss. 28.01 and 28.02, F.S., which specifies the bond to be given by clerks of small counties and large counties.
[8] See, National Surety Corporation v. Sholtz,166 So. 213 (Fla. 1936).